In re CORPORATE BUSINESS PRODUCTS, INC., a California Corporation, and Authorized Distribution Center, Inc., a California Corporation, Debtor(s).

Bankruptcy Nos. LA 95–11421–
ER and LA 95–11423–ER.

United States Bankruptcy Court,
C.D. California.

June 30, 1997.

Karen Wheeler, Los Angeles, CA, for Office of the United States Trustee.

Adrienne M. Coffin, Jeffer, Mangels, Butler, & Marmaro, L.L.P., Los Angeles, CA, for Reorganized Debtors.

## MEMORANDUM OF DECISION

ERNEST M. ROBLES, Bankruptcy Judge.

On May 22, 1997, this Court heard arguments on the Motion for Order Granting Final Decree and Closing Chapter 11 Cases (the "Motion") filed by Corporate Business Products, Inc. and Authorized Distribution Center, Inc. ("Reorganized Debtors") and the United States Trustee's ("U.S. Trustee") objection. The U.S. Trustee contended Reorganized Debtors owe unpaid postconfirmation quarterly fees to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6). The Court rendered its decision at the hearing to deny the Motion without prejudice and ordered upon proof that full payment of all postconfirmation quarterly fees in both cases has been tendered to the U.S. Trustee, Reorganized Debtors may submit a proposed final decree to the Court. The Court also reserved the right to further state its reasoning in this Memorandum of Decision.

## I. FACTS

Corporate Business Products, Inc. and Authorized Distribution Center, Inc. filed Voluntary Petitions under Chapter 11 of the United States Bankruptcy Code on January 19, 1995. This Court ordered joint administration of the cases under Federal Rule of Bankruptcy Procedure 1015(b) on March 27, 1995. The Debtors' Joint Plan of Reorganization ("Plan") was confirmed on February 13, 1996. On February 28, 1997, this Court issued an Order to Show Cause Regarding Dismissal or Conversion to a Case Under Chapter 7 of the Bankruptcy Code. In response to this order, Reorganized Debtors filed a Motion for Order Granting Final Decree and Closing Chapter 11 Cases.[1] The

1. The Court's Order to Show Cause was discharged and taken off the calendar.

U.S. Trustee objected to the Motion, contending Reorganized Debtors owe quarterly post-confirmation quarterly fees to the U.S. Trustee under 28 U.S.C. § 1930(a)(6).[2]

## II. ISSUE PRESENTED AND SUMMARY OF DECISION

The issue before the Court is whether all disbursements made by post-confirmation reorganized debtors are deemed "disbursements" under 28 U.S.C. § 1930(a)(6) and subject to U.S. Trustee fees. Reorganized Debtors argued "disbursements" are limited to payments from the bankruptcy estate, which ceased to exist upon confirmation.[3] Reorganized Debtors contended because no post-confirmation disbursements have been made-from the bankruptcy estate, only the minimum fee[4] is due with respect to the post-confirmation periods. The U.S. Trustee argued all postconfirmation payments made by Reorganized Debtors constitute "disbursements" within the meaning of 28 U.S.C. § 1930(a)(6). This court agrees with the U.S. Trustee's view for the reasons set forth in detail below.

## III. DISCUSSION

The scope of the term "disbursement" in 28 U.S.C. § 1930(a)(6) is not a settled issue of law and has led to conflicting interpretations in the bankruptcy courts. This is apparently a matter of first impression in the Central District of California. In determining whether post-confirmation payments constitute "disbursements" within the meaning of § 1930(a)(6), the statute must be interpreted consistently with congressional intent by examining the legislative history of the statute's successive amendments.

### A. Legislative History

Congress amended 28 U.S.C. § 1930 two times in 1996. First, on January 27, 1996, Section 1930(a)(6) was amended in the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, Title II, § 211[5], 110 Stat. 26, 37–38 (the "January Amendment"), to provide:

"In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $3,000,000; $5,000 for each quarter in which disbursements total $3,000,000 or more. The fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed." 28 U.S.C. § 1930(a)(6) (1996).

The January Amendment provides that the payment of fees would occur during the entire pendency of the case even after the plan has been confirmed. Before this amendment, quarterly fees ceased to become due

---

**2.** The U.S. Trustee contended the total quarterly fee owed with respect to the Corporate Business Products estate is $1,250, and the total quarterly fee owed with respect to the Authorized Distribution Center estate is $1,000. The U.S. Trustee estimated the amount based upon pre-confirmation disbursement information, because Reorganized Debtors failed to provide any post-confirmation information to the U.S. Trustee. The Court ordered the amounts owing to the U.S. Trustee could be amended if Reorganized Debtors submit complete quarterly reports reflecting all post-confirmation disbursements in the cases to the U.S. Trustee. *See* Order After Hearing on Motion for Order (1) Granting Final Decree, and (2) Closing Chapter 11 Cases.

**3.** The Order Confirming Debtors' Joint Liquidating Plan vested all assets of the estate in the Reorganized Debtors. Order Confirming Debtors' Joint Liquidating Plan, at p. 3, lines 5–15.

**4.** Reorganized Debtors contended they are only required to pay the minimum quarterly fee of $250 which is imposed in quarters when the quarterly disbursements from the bankruptcy estate are less than $15,000.

**5.** Section 211 states in pertinent part: "Provided, That, with the exception of section 114, the General Provisions for the Department of Justice included in title I of [House Conference Report 104–378] are hereby enacted into law." The General Provisions in the House Conference Report 104–378, Section 111, at 17, states the following: "Section 1930(a)(6) of title 28, United States Code, is amended by striking the words la plan is confirmed or'."

upon confirmation of the plan. Because of the decline in bankruptcy filings, Congress enacted the January Amendment with the purpose of raising revenues by extending the quarterly fee payments made under chapter 11 to include the postconfirmation period. H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17 (1995).

The purpose of the January Amendment, however, was not completely realized when several courts [6] refused to apply the statute retroactively to plans confirmed prior to January 27, 1996, the amendment's effective date. As a result, Congress enacted the second amendment to 28 U.S.C. § 1930 with § 109(d) of the Omnibus Consolidated Appropriations Act, Pub.L. 104–208, 110 Stat. 3009 (1996) ("the September Amendment"), effective September 30, 1996.

The September Amendment affected the quarterly fees in two ways. First, the quarterly fee amounts set forth in 28 U.S.C. § 1930(a)(6) were increased.[7] Second, Congress made its intention clear that the January Amendment is to be given retroactive effect even to debtors with plans confirmed before the prior amendment's effective date.[8] The September Amendment furthers the purpose of the prior amendment of enhancing revenues for the U.S. Trustee by both increasing fees and making the prior amendment apply retroactively.

The legislative history clearly indicates payments from reorganized debtors are disbursements from which quarterly fees are to be calculated. *In re P.J. Keating Co.*, 205 B.R. 663, 665 (Bankr.D.Mass.1997). House Conference Report 104–378 states the following:

> "The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. The conferees intend that this fee will apply to both pending and new cases." H.R. Conf. Rep. No. 104–378, at 101 (1995).

Because Congress clearly intended the statute to apply to reorganized debtors for the entire reorganization period until the case is converted or dismissed, the statute should be so interpreted.

## B. Reorganized Debtors' Arguments

Reorganized Debtors rely on cases [9] which hold that any payments made by a reorga-

---

**6.** See, e.g., *In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260 (Bankr.S.D.Ohio 1996); *In re CF & I Fabricators of Utah, Inc.*, 199 B.R. 986 (Bankr. D.Utah 1996); *In re Hudson Oil Co. Inc.*, 200 B.R. 52 (Bankr.D.Kan.1996); and *In re Precision Autocraft, Inc.*, 197 B.R. 901 (Bankr.W.D.Wash. 1996).

**7.** Section 109(a) reads, in relevant part: Section 1930(a) of title 28, United States Code is amended ... in paragraph (6), by striking everything after "total less than $15,000;" and inserting in lieu thereof: $500 for each quarter in which disbursements total $15,000 or more but less than $75,000; $750 for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $1,000 for each quarter in which disbursements total $5,000,000 or more. Omnibus Consolidated Appropriations Act, Pub.L. 104–208, § 109(a), 110 Stat. 3009 (1996).

**8.** The Omnibus Consolidated Appropriations Act § 109(d) states: "Section 101(a) of Public Law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting ': Provided further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans' after 'enacted into law.'" Pub.L. No. 104–208, 110 Stat. 3009 (1996).

**9.** *In re Maruko Inc.* 206 B.R. 225 (Bankr.S.D.Cal. 1997) (relying on *Saint Angelo* and holding that post-confirmation payments made by reorganized debtors are not included in the quarterly fee calculations under 28 U.S.C. § 1930(a)(6)); *See also In re Betwell Oil and Gas Co.*, 204 B.R. 817 (Bankr.S.D.Fla.1997); *In re Boulders on the River, Inc.*, 205 B.R. 948 (Bankr.D.Or.1997); *In re Jamko, Inc.*, 207 B.R. 758 (Bankr.S.D.Fla. 1996); *In re SeaEscape Cruises Ltd.*, 201 B.R. 321 (Bankr.S.D.Fla.1996).

nized debtor after the plan's effective date do not constitute "disbursements" under § 1930(a)(6) and cannot serve as a basis upon which the U.S. Trustee may calculate its fee. These cases rely on the definition of "disbursements" set out in *Saint Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir.1994), modified, 46 F.3d 969 (9th Cir.1995), as "all payments from the bankruptcy estate." [10] Focusing on the language used in *Saint Angelo*, Reorganized Debtors argued because the bankruptcy estate revested in Reorganized Debtors after confirmation, there can be no post-confirmation disbursements from the bankruptcy estate. Consequently, only the minimum fee is due during this period. This Court finds that while *Saint Angelo* does define "disbursements," that case is distinguishable from the case at bar, and the definition taken out of context would render the subsequent amendments to § 1930(a)(6) moot.

### 1. The Language in *Saint Angelo* is Merely Incidental

*Saint Angelo* dealt with the issue of whether "disbursements" include both payments to secured creditors and non-secured creditors. The court did not have to determine whether "disbursements" include post-confirmation payments from reorganized debtors. The use of the language, "from the bankruptcy estate," is merely incidental, because the *Saint Angelo* court was emphasizing the broad scope of the types of payments which constitute "disbursements" rather than considering the issue of whether these payments were to be limited to only those arising from the "bankruptcy estate" Further, *Saint Angelo* was decided before the two subsequent amendments to the statute. Although *Saint Angelo* attempted to define "disbursements" consistently with congressional intent, this definition cannot be taken out of context to apply to a new situation governed by an amended statute which the *Saint Angelo* court did not and could not have considered.

### 2. Applying the *Saint Angelo* Definition of "Disbursements" Would Frustrate Congressional Intent

Because the definition given in *Saint Angelo* is inconsistent with the congressional intent of the two subsequent amendments, this Court must overlook the incidental use of the words "bankruptcy estate" for purposes of this case. A blind application of the *Saint Angelo* definition would lead to a result Congress clearly could not have intended.

In the interpretation of statutes, the function of the courts is to construe the language so as to give effect to the congressional intent. *United States v. American Trucking Ass'ns*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). Often the words are sufficient in and of themselves to determine the purpose of the legislation. In such cases the court must follow the plain meaning. *Id.* at 543, 60 S.Ct. at 1063. When the plain meaning of the statute leads to absurd or futile results, the Court needs to look beyond the words to the purpose of the act. *Griffin v. Oceanic Contractors*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982).

Limiting the definition of "disbursements" to include only payments made from the bankruptcy estate would render the amendments to the statute a nullity in all cases where assets revest in the reorganized debtor after confirmation.[11] It is clear the legislative purpose of the amendments is to raise revenues and reorganized debtors are included in the fee calculation. Under Reorganized Debtors' interpretation, Reorganized Debtors would be subject to the sliding scale fees only for the pre-confirmation period, the situation which debtors were in before the statute was amended. It is implausible that Congress amended the statute in January of 1996 to make the elaborate sliding scale of fees applicable post-confirmation, only to have the minimum fee apply post-confirmation.

---

**10.** In *Saint Angelo,* the court held it was error for the district court to hold that the term "disbursements" excluded all payments to a secured creditor from the sale proceeds of the secured property. *Saint Angelo,* 38 F.3d at 1534. The court stated that the statute does not distinguish between payments to secured creditors and payments to unsecured creditors. *Id.* at 1535.

**11.** 11 U.S.C. § 1141(b) states: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

Even courts which hold a middle position that postconfirmation payments made by the reorganized debtor which are made pursuant to the debtor's plan constitute "disbursements" under § 1930(a)(6) acknowledge "it makes no sense to hold that the post-confirmation payments made from the liquidation of the remaining assets are not disbursements just because the remaining assets were vested in a reorganized debtor or liquidating trust at confirmation." *See, e.g., In re Betwell Oil and Gas Co.,* 204 B.R. 817, 819 (Bankr.S.D.Fla.1997) Proponents of the intermediate interpretation [12] prefer their holding to our broader interpretation that all payments made by a reorganized debtor, whether made pursuant to a plan or not, are deemed "disbursements," because they consider it to be unfair to tax the reorganized debtor who is out of bankruptcy. The court's role, however, is not to interpret the statute in a manner which is most equitable, but to apply the statute consistently with the congressional purpose. "The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with [the] Court. Congress may amend the statute; we may not." *Griffin, supra,* at 576, 102 S.Ct. at 3252. Because Congress clearly intended the statute to apply to reorganized debtors during the post-confirmation period, this court must interpret the statute so as not to frustrate the congressional goal of the amendments.

In addition, this Court's broader construction of "disbursements" may be consistent with the plain meaning of the statute. 28 U.S.C. § 1930(a)(6) states fees are to be based upon disbursements "in each case." The amendment plainly states fees are to be calculated from each pending case; nowhere in the amendment does the statute mention disbursements should be calculated from payments arising out of the "estate." Given the fact payments from both the bankruptcy estate and from reorganized debtors stem from the same "case," it is likely Congress intended both to be included in the calculations of quarterly fees.

Absent congressional clarification, the quarterly fees arising from the reorganized debtor should be calculated in the same manner disbursements arising from the bankruptcy estate are calculated. If Congress wanted the quarterly fees to be based solely on disbursements out of the bankruptcy estate, then Congress, not the courts, will need to make this intention clear, perhaps with further amendment of the statute.

## IV. CONCLUSION

In sum, this Court concludes all post-confirmation disbursements made by the bankruptcy estate as well as by reorganized debtors constitute "disbursements" under 28 U.S.C. § 1930(a)(6). For these reasons, this Court denied Reorganized Debtors' Motion for Order Granting Final Decree and Closing Chapter 11 Cases.

---

**12.** Judge Mark, in *In re Betwell,* gives the following as a reason against treating all post-confirmation payments as "disbursements" until the case is closed: "First, it would be grossly unfair to tax the general business operations of the reorganized debtor. Upon the effective date of a plan, except for the limited jurisdiction reserved by the Court under the plan and under the Bankruptcy Code, the reorganized debtor is and should be 'out of bankruptcy.'" *In re Betwell,* 204 B.R. at 819.