**In re ROY STANLEY, INC., Debtor.**

**Bankruptcy No. 94–62595.**

United States Bankruptcy Court,
N.D. New York.

Nov. 20, 1997.

Guy A. Van Baalen, Asst. U.S. Trustee, Utica, NY.

David P. Zangari, Liverpool, NY, for Debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter is before the Court by way of an Order to Show Cause Why a Report of Substantial Consummation and Application for Final Decree should not be filed by Roy Stanley, Inc. ("Debtor"), dated March 19, 1997. The Assistant United States Trustee, Guy A. Van Baalen, Esq. ("UST"), filed a response on March 24, 1997, opposing the Court's entry of a final decree until the Debtor pays the UST's quarterly fees. The matter was originally heard at the Court's regular motion term in Syracuse, New York, on April 22, 1997. At the hearing, Debtor's counsel requested an adjournment in order to allow certain checks issued by the Debtor to clear. The matter was subsequently adjourned on consent to May 20, 1997, June 20, 1997, and July 22, 1997, on the consent of the parties. On July 22, 1997, the Debtor indicated its objection to the UST's calculations of its quarterly fees post-confirmation and requested that the Court allow the parties to either resolve the issue or to submit papers to the Court for a decision on the issue. On August 12, 1997, the parties informed the Court that they had been unable to reach an agreement and asked the Court to render a decision without further oral argument. The Court afforded the parties an opportunity to file memoranda of law, and the matter was submitted for decision on August 29, 1997.[1]

### *JURISDICTIONAL STATEMENT*

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A).

---

1. The Debtor failed to file its memorandum of law until September 2, 1997. On September 8, 1997, the UST objected to the Court's consideration of the Debtor's memorandum of law. In light of the objection and the failure of the Debt-or's counsel to seek an extension, the Court will not consider the Debtor's memorandum of law in addressing the issue before it because of its untimeliness.

## FACTS AND ARGUMENTS

On September 22, 1994, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). The Debtor filed a plan pursuant to Code § 1121(a) on December 28, 1995, which was confirmed by this Court by Order dated October 9, 1996.

The UST argues that a report of substantial consummation and an application for a final decree should not be accepted by the Court until the Debtor complies with 28 U.S.C. § 1930(a)(6) ("Section 1930") by paying its post-confirmation fees to the UST. The UST contends that the Debtor owes quarterly fees for the fourth quarter of 1996 as well as the first and second quarters of 1997. It is the position of the UST that the plain language of the statute requires debtors to pay a quarterly fee in each chapter 11 case during the pre- and post-confirmation period based upon disbursements. The UST points out that the statute makes no distinction between the calculation of pre- and post-confirmation fees. The UST argues that the 1996 amendment to Section 1930 extended the time period during which the quarterly fees must be paid. The UST argues that the statute does not restrict post-confirmation "disbursements" to plan payments. The UST also argues that to disallow operating expenses in the calculation of the post-confirmation fees, as the Debtor suggests, would be contrary to Congress' intent when it amended the statute as it would impede the system Congress created to fund the U.S. Trustee program.

The Debtor argues that post-confirmation fees required by Section 1930 should be based upon payments made by the bankruptcy estate pursuant to the confirmed plan. The Debtor contends that the quarterly fees should not be calculated based on the operating expenses of the reorganized debtor. In support of its position, the Debtor directs the Court's attention to *In re SeaEscape Cruises, Ltd.*, 201 B.R. 321 (Bankr.S.D.Fla.1996).

## DISCUSSION

The quarterly fees to be paid to the UST in each case under chapter 11 of the Code are governed by Section 1930. *See In re Sedro–Woolley Lumber Co., Inc.*, 209 B.R. 987, 988 (Bankr.W.D.Wash.1997). Up until January 26, 1996, Section 1930 required the payment of quarterly fees to the UST until the case was converted or dismissed or a chapter 11 plan was confirmed. However, on January 26, 1996, the statute was amended to delete any reference to plan confirmation. *See* Balanced Budget Downpayment Act, Pub.L. 104–99, § 211, 110 Stat. 26, 37–38 (1996) ("January 26, 1996 Amendment"). The January 26, 1996 Amendment, which became effective January 27, 1996, made no change in the requirement that a graduated fee be paid to the UST based upon "disbursements" in the case.

There is nothing in the statute or its legislative history that defines the term "disbursement." *See In re Gates Community Chapel of Rochester, Inc.*, 212 B.R. 220, 225 (Bankr.W.D.N.Y.1997). However, the legislative history does provide guidance concerning the purpose of the statute. In 1986 when confronted with serious budget deficit concerns, Congress expressed its intent that the U.S. Trustee program be self-funding, using monies generated by quarterly fees in chapter 11 cases. *See* H.R.Rep. No. 99–764 at 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 527, 5237–38. In 1995 with the decline in bankruptcy filings, the House Committee on Appropriations recommended extending the quarterly fee payments made under chapter 11 "to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period) ... The additional fees ... will provide the resources necessary to ensure adequate post-confirmation oversight and supervision of Chapter 11 cases." *See* H.R.Rep. No. 104–196 at 16–17 (1995), 1995 WL 432338 at 34.

In calculating pre-confirmation quarterly fees, the courts have included all payments made from the bankruptcy estate. *See, e.g., Saint Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1534 (9th Cir.1994), *amended by* 46 F.3d 969 (9th Cir.1995); *In re Betwell Oil and Gas Co.*, 191 B.R. 954, 957 (Bankr. S.D.Fla.1996); *In re Meyer*, 187 B.R. 650, 654 n. 2 (Bankr.W.D.Mo.1995). There is nothing in the legislative history to suggest

that Congress, in extending the payments to the post-confirmation period, intended to modify or alter the method by which the quarterly fees were to be calculated. *See Gates Community Chapel,* 212 B.R. at 225; *In re Corporate Business Prod., Inc.,* 209 B.R. 951, 955 (Bankr.C.D.Cal.1997); *see also In re P.J. Keating Co.,* 205 B.R. 663, 665 (Bankr.D.Mass.1997) (indicating that "Congress wanted the debtor to pay the same quarterly fees after confirmation as it did before confirmation in order to ensure adequate funding of the bankruptcy system.").

The Debtor, however, would have the Court draw a distinction between the payments made by the bankruptcy estate pursuant to the plan and those made by the reorganized Debtor in the course of operating its business post confirmation. In support of its position, the Debtor directs the Court to the holding in *SeaEscape Cruises.* The court in *SeaEscape Cruises* adopted the definition of "disbursement" that the Ninth Circuit used in *Victoria Farms,* which required that the fees be based on the payments from the bankruptcy estate. The court in *SeaEscape Cruises* noted that

> A bankruptcy estate is created when a petition for relief is filed. The bankruptcy estate is a separate legal entity. (citations omitted). Upon a plan's confirmation and/or pursuant to the plan's terms, the bankruptcy estate's assets revest in the name of the reorganized debtor and are no longer part of the bankruptcy estate. 11 U.S.C. § 1141(b). (citations omitted). Therefore, any payments, distributions or allocations made by the reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute "disbursements" under Section 1930(a)(6) and cannot serve as a basis upon which the U.S. Trustee may calculate its fees. The U.S. Trustee may, however, calculate post-confirmation fees on any disbursements made by the bankruptcy es-

tate after the plan's effective date. Such disbursements would include, for example, any payments made pursuant to a confirmed plan of reorganization.

*SeaEscape Cruises,* 201 B.R. at 323. Accordingly the court interpreted "disbursements" as encompassing payments made by the bankruptcy estate in both pre-and post-confirmation periods. The court effectively said that only the payments made pursuant to the plan constituted "disbursements" for purposes of calculating post-confirmation quarterly fees. *See also In re Betwell Oil and Gas Co.,* 204 B.R. 817 (Bankr.S.D.Fla.1997) and *In re Jamko, Inc.,* 207 B.R. 758 (Bankr. S.D.Fla.1996).[2]

The Court finds fault with the rationale of the court in *SeaEscape* and its reliance on the language in *Victoria Farms.* The issue before the court in *Victoria Farms* was whether payments to secured creditors, as well as those to unsecured creditors, constituted disbursements. At the time of the court's decision, the case had been dismissed and the question of payment of the UST's fees did not involve the issue of what constituted "disbursements" post-confirmation. Indeed, the case was decided prior to the amendments to Section 1930 at a time when there was no requirement that UST's fees be based on both pre- *and* post-confirmation disbursements.

As pointed out by the court in *SeaEscape Cruises,* upon confirmation, the bankruptcy estate's assets revest in the name of the reorganized debtor. *See* 11 U.S.C. § 1141(b). Therefore, the bankruptcy estate ceases to exist upon confirmation, and even the payments made by the reorganized debtor pursuant to the plan cannot be payments from the bankruptcy estate. Furthermore, there is no reason for interpreting disbursements narrowly in the post-confirmation period to encompass only payments to creditors under the terms of the plan made from property of the estate. *See Sedro–Woolley*

---

**2.** At least two other courts have determined that since there is no bankruptcy estate postpetition, plan payments are made from the reorganized debtor's property rather than estate property and, therefore, the debtor could only be assessed the minimum fee set forth in Section 1930. *See In re Maruko, Inc.,* 206 B.R. 225, 229 (Bankr.

S.D.Cal.1997) (stating that "any payments, distributions or allocations made by a reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute 'disbursements' under section 1930(a)(6) . . .") and *In re Boulders on the River, Inc.,* 205 B.R. 948 (Bankr.D.Or.1997).

*Lumber,* 209 B.R. at 989 (agreeing with the conclusion in *P.J. Keating* that the "plain language" of the statute "does not limit the source of disbursements to property of the estate, nor does it limit payments to those made under the plan."). Arguably, if the discussion of "disbursement" set forth by the court in *SeaEscape* were to be adopted, there would never be post-confirmation disbursements, and only the minimum fee provided for in Section 1930 would be due the UST. This would obviously frustrate Congress' efforts to increase revenues to support the UST program. The Court concludes that the disbursements on which the post-confirmation quarterly fees of the UST are to be calculated include payments made by the reorganized Debtor pursuant to the plan and payments made in the operation of its business post-confirmation. As pointed out by the court in *Corporate Business Products,* whether it is fair for a reorganized debtor to continue to shoulder the costs associated with the payment of the UST's fees based on its post-confirmation operating expenses is a matter left to be addressed by Congress, not the Court. *See Corporate Business* Prod., 209 B.R. at 955.

Based on the foregoing, it is hereby

ORDERED that the post-confirmation fees due the UST for the fourth quarter of 1996 and the first two quarters of 1997 should be calculated on the basis of all disbursements made by the reorganized Debtors for those periods;[3] it is further

ORDERED that the post-confirmation fees due the UST shall be paid within 30 days of the date of this Order; and it is further

ORDERED that the Debtor file a report of substantial consummation and application for a final decree within 45 days of the date of this Order.

---

3. But for the issue of what disbursements were to be included in the calculation of the UST's fees, it is the opinion of the Court, based on statements made by Debtor's counsel at the hearing on April 22, 1997, that the Debtor would have filed its report of substantial consummation and application for final decree in the second quarter of 1997. However, if the Debtor fails to comply with the terms of this Order, the UST may request the Court to award additional fees for subsequent quarters.