In re WINTERSILKS, INC., Debtor.

Bankruptcy No. 98–33887–11.

United States Bankruptcy Court,
W.D. Wisconsin.

Dec. 23, 1999.

William J. Rameker, Murphy & Desmond, S.C., Madison WI, for debtor.

Sheree Dandurand, Madison, WI, U.S. Trustee.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

In 1998 the debtor, Wintersilks, Inc., filed for Chapter 11 Bankruptcy. On Feb-

ruary 22, 1999, this court confirmed the debtor's plan of reorganization, and on September 21, 1999, a hearing was held regarding the debtor's Application for Final Decree and Order of Substantial Consummation. The U.S. Trustee objected on the ground that the debtor failed to pay quarterly fees due for the third quarter of 1999 and underpaid fees for the second quarter of 1999.

The debtor argues that it is not required to pay fees to the U.S. Trustee for the third quarter of 1999. Furthermore, the debtor contends that the fees paid to the U.S. Trustee for the second quarter of 1999 were inadvertently paid and should be refunded. According to the debtor, the party commencing the case is responsible for paying trustee's fees. The party commencing this Chapter 11 proceeding was Wintersilks, Inc., which during the case was merged into Wintersilks of Jacksonville, Inc. and ceased to exist as a legal entity. Wintersilks of Jacksonville was subsequently merged into Wintersilks, L.L.C. Therefore, debtor argues Wintersilks Inc. is not responsible for paying trustee's fees because it ceased to exist as a legal entity, and Wintersilks, L.L.C. is not responsible for paying trustee's fees because Wintersilks, L.L.C was not the party commencing the case.

Wintersilks, L.L.C. argues that if it is responsible for paying the trustee's fees, the amount of fees due should be the statutory minimum amount of $250.00 or should be based solely on the debtor's disbursements under the plan. The U.S. Trustee argues that the amount of the fee should be determined based on all monies "expended" or "paid out."

Finally, the parties have stipulated that no matter what decision this court reaches, this case should be closed *nunc pro tunc* to September 30, 1999, so that no U.S. Trustee's fees will be due for the fourth quarter of 1999.

Title 28 U.S.C. § 1930(a) provides that the "parties commencing a case under title 11 shall pay to the clerk of district court or the clerk of the bankruptcy court" filing fees described in 28 U.S.C. § 1930(a)(1)–(5). Subsection (6) of § 1930(a) then provides that:

> In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first....

28 U.S.C. § 1930(a)(6). The language found in subsections (1)–(5) differs from that found in subsection (6), and there is confusion as to whether the phrase "parties commencing a case" found in the introduction to subsection (a) also applies to subsection (a)(6).

The U.S. Trustee argues that subsection (a)(6) is grammatically separate from subsections (1)–(5) and does not expressly name the payor. Therefore, according to the U.S. Trustee, § 1930(a)(6) does not impose the quarterly fee on the party commencing the case.[1]

---

1. One case, *In re Boulders on the River, Inc.*, has directly addressed the issue. According to the court in *Boulders:*

> The statute appears to assess a quarterly fee against "the parties commencing a case under title 11...."This alone is somewhat ambiguous, however, due to the break in the cadence of the statute. The statute begins with a list of five categories of fees which "the parties commencing a case under title 11 shall pay to the clerk" of court. The sixth category of fees under section 1930(a) is the UST quarterly fee. Here the

> language of the statute changes somewhat, directing that, "[i]n addition to the filing fee to be paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11...."Although the statute does not specify the entity responsible for paying the fee, nothing in the statute indicates a departure from the initial focus on "the parties commencing a case under title 11," as set forth at the beginning of the series. *In re Boulders on the River*, 218 B.R. 528, 536 (D.Or.1997, J. Hogan).

The U.S. Trustee relies on the legislative history of § 1930(a)(6) to demonstrate that Congress intended the debtor in each case to be responsible for the payment of quarterly fees for the entire duration of the Chapter 11 case. Congress amended § 1930(a)(6) in 1996 to extend quarterly payments post-confirmation in an effort to collect additional revenues to support the self-funded administration of bankruptcy cases. *See Matter of Upton Printing*, 197 B.R. 616, 620 (Bankr.E.D.La.1996). The U.S. Trustee claims that if Wintersilks, L.L.C.'s reasoning were taken to its logical conclusion, no reorganized debtor would ever be responsible for the payment of post-confirmation quarterly fees, an outcome inconsistent with the intent of Congress to raise revenue.

The U.S. Trustee cites *In re A.H. Robins Co., Inc.* to support its argument. In *A.H. Robins*, 219 B.R. 145, 153 (Bankr. E.D.Va.1998, J. Shelley), the court found a new corporation liable for fees under § 1930(a)(6). The court noted that American Home Products purchased the debtor and established a new A.H. Robins as a subsidiary of American Home Products, Inc. *Id.* at 146. Although the facts of *A.H. Robins* are similar to Wintersilks' facts, the court in *A.H. Robins* did not directly address the issue of whether the new corporation was the "party commencing a case."

Another court, however, did address the issue of whether Congress intended only the party commencing the case to be responsible for quarterly fees. In *In re Postconfirmation Fees*, 224 B.R. 793, 797 (E.D.Wash.1998, J. Williams) the court stated:

> In this situation, the corporate debtors are the same corporate entity which existed pre-petition, which existed during the pendency of the Chapter 11 and which now exist post-petition. The corporate entity has not changed. The individual debtors are the same individuals who commenced the proceedings, reorganized and continue the current

operations. The basis of the argument, however, is a legal distinction between a "debtor" and a "reorganized debtor". According to debtors' argument, as the reorganized debtor is a different legal entity which did not exist until after confirmation of the plan, it could not therefore be the "party which commenced the case" and against which the fee is to be assessed. Although interesting from a metaphysical view, the argument is not persuasive in this context. Congress in early 1996 amended § 1930(a)(6) to require the payment of postconfirmation U.S. Trustee fees for the reasons set forth in the legislative history, i.e. increased funding for the U.S. Trustee system. When it became apparent that the language in the statute did not clearly reflect congressional intent regarding its application to already confirmed cases, Congress amended the statute again to clarify that the fees were to be assessed against ALL Chapter 11 debtors regardless of the status of plan confirmation. Congress has spoken twice within the same year on the subject, and to interpret the statute in the manner suggested by debtors would result in no Chapter 11 debtor with a confirmed plan paying the fee. Such interpretation is clearly contrary to congressional intent and the language of the statute itself does not require such a result. *Id.*

Wintersilks, L.L.C. further claims that it did not agree to assume the trustee fee obligations under the plan. According to Wintersilks, L.L.C., section 3.1d of the Plan states that the reorganized debtor will file quarterly fee statements and pay quarterly fees. Under section 1.1aw of the Plan, the reorganized debtor is defined as Wintersilks. Section 1.1bh of the Plan defines Wintersilks as Wintersilks, Inc., not Wintersilks, L.L.C. Therefore under the Plan, Wintersilks, Inc. is responsible for paying trustee fees. Wintersilks, L.L.C. further argues that even though in

the Articles of Merger it assumed any "unpaid obligation[s] under the Plan," these obligations only include obligations to creditors. Therefore, according to Wintersilks, L.L.C., they are not responsible for paying the U.S. Trustee's quarterly fees because they are not the party commencing the case, and the U.S. Trustee was not a creditor whose claim was assumed.

Wintersilks' argument is flawed. Article II of the first Articles of Merger states that Wintersilks of Jacksonville will be responsible for all liabilities and obligations of Wintersilks, Inc., and Article II of the second Articles of Merger states that Wintersilks, L.L.C. will be responsible for all liabilities and obligations of Wintersilks of Jacksonville. There is no definition of "obligation" in either the Articles of Merger or the Plan. Section 1.2 of the Plan states that "[a]ny term used in this Plan that is not defined in this Plan but that is used in the Code has the same meaning as assigned to that term in the Code." The Bankruptcy Code, however, does not define "obligation" either. The U.S. Supreme Court in *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) has noted, "a fundamental cannon of statutory construction is that ... words will be interpreted as taking their ordinary, contemporary, common meaning." An "obligation" is defined as a "duty, contract, promise, or other social, moral, or legal requirement that compels one to follow or avoid a given course of action." The American Heritage Dictionary 857 (1982). Section 3.1d of Wintersilks' Plan of Reorganization states:

All quarterly fees payable under 28 U.S.C. § 1930 shall be paid on or before the Effective Date of this Plan, as required by 11 U.S.C. § 1129(a)(12). The Reorganized Debtor shall continue to file quarterly fee statements and pay quarterly fees when due until the case is converted, dismissed or closed....

It is clear that Section 3.1d of the Plan imposes on obligation on the reorganized

debtor to pay quarterly U.S. Trustee fees. First, Wintersilks of Jacksonville and subsequently, Wintersilks, L.L.C. assumed this obligation in the Articles of Merger. Therefore, Wintersilks, L.L.C. is responsible for the payment of U.S. Trustee fees for the second and third quarters of 1999.

This outcome is supported by *In re Pettibone Corporation*, a case cited by Wintersilks, L.L.C. for another proposition. The court stated:

Although no additional UST fees are due at this time based upon Heico's day-to-day operation, it would have been responsible for such fees had they been due. Section 1930(a)(6) obligates the parties commencing a bankruptcy case to pay certain fees including UST fees....As the Debtor entities commencing this case no longer legally exist, the obligation must succeed, either to the reorganized debtor, or the PL Trustee or perhaps to both.

*In re Pettibone Corporation* (Bankr. N.D.Ill. Aug. 16, 1999, Judge Schmetterer). That court further stated that the specific language of the bankruptcy plan determines the responsibility of the parties. Wintersilks' plan recognized an existing obligation to pay U.S. Trustee quarterly fees. That obligation was assumed by Wintersilks, L.L.C. Therefore, whatever the legislative history of § 1930(a)(6), Wintersilks' Plan of Reorganization and Articles of Merger support a finding that Wintersilks, L.L.C. is responsible for the U.S. Trustee quarterly fees for the second and third quarters of 1999.

■ What is a disbursement under § 1930(a)(6)? Neither the legislative history nor the Code provides a definition of this term. No circuit court has addressed this issue. Three lines of cases decided by lower courts have developed.

The first line of cases holds that because a bankruptcy estate ceases to exist post-confirmation, there can be no post-confirmation disbursements. *See St. Angelo v.*

*Victoria Farms,* 38 F.3d 1525, 1534 (9th Cir.1994). *Victoria Farms* defined disbursement "to include all payments from the bankruptcy estate." *Id. Victoria Farms,* however, was decided in 1994, before the 1996 amendments. Prior to 1996, the U.S. Trustee quarterly fee was required for all chapter 11 plans until such "plan is confirmed or the case is converted or dismissed, whichever occurs first." *Id.* at 1528. The 1996 amendments took the word "confirmed" out of § 1930(a)(6); therefore, U.S. Trustee quarterly fees terminated only when a case was converted, dismissed or closed. Because prior to 1996, U.S. Trustee fees could be terminated by confirmation of a bankruptcy plan, the *Victoria Farms* court did not address the definition of "disbursement" post-confirmation. The bankruptcy court case of *In re Celebrity Duplicating Services, Inc.,* 216 B.R. 942, 945 (C.D.Cal.1997, J. Tevrizian), however, found the definition of "disbursement" used in *Victoria Farms* controlling. The court stated:

> It is well settled that Congress is charged with knowing judicially created law when it amends statutes, and that such judicially created law can only be displaced by clearly stated Congressional intent....This Court finds no such clearly stated intent in the amendment to section 1930. Hence, the Victoria Farms definition of disbursement remains applicable in the context of section 1930(a)(6) fee calculation.

*Id.* Therefore based on the holding in *Celebrity,* post-confirmation U.S. Trustee fees could not exceed $250.00, the statutory minimum. Other courts have not adopted the reasoning of *Celebrity,* and instead have reasoned that had the 1996 amendments been in effect when *Victoria Farms* was decided, the Ninth Circuit would have adopted a broader definition of disbursement. *See e.g. In re Boulders on the River, Inc.,* 218 B.R. 528, 537 (D.Or. 1997).

The second line of cases adopts a wide view and defines disbursements to include all ordinary course payments made post-confirmation. The U.S. Trustee urges this court to adopt the view of the second line of cases.

The first case to adopt the broad definition of "disbursements" was *In re P.J. Keating Co.,* 205 B.R. 663 (Bankr.D.Mass. 1997, J. Queenan). In determining that disbursements include all payments made in the ordinary course, the court relied on the pre-amendment case of *Victoria Farms* and on Congressional intent. The court stated:

> Prior to being amended, section 1930(a)(6) applied only to preconfirmation debtors. It is therefore expected that courts [*Victoria Farms* ] construing the statute as it then read would refer to payments from the bankruptcy estate. Until confirmation, all payments made in the operation of a business necessarily come from the estate. Congress has given no indication that ordinary course of business payments should not also increase the fees payable by reorganized debtors. Congress intended to enhance revenues by these amendments. To restrict "disbursements" to those made from the bankruptcy estate would frustrate that intent.

*Id.* at 667. According to the *Keating* court, the purpose of § 1930(a)(6) was to raise revenue. If ordinary course payments are taken into account pre-confirmation in determining quarterly U.S. trustee fees, they should also be taken into account post-confirmation. The bankruptcy court in *In re A.H. Robins, Co., Inc.,* 219 B.R. 145, 151 (Bankr.E.D.Va.1998, J. Shelley) also relied on *Victoria Farms,* as well as the plain meaning of the statute, in determining that post-confirmation disbursements include all ordinary course payments. The court stated:

> [T]he St. Angelo court specifically referred to the ordinary, common meaning of "disbursement," finding that it means solely "to expend ... pay out...."This Court, therefore, does not find that St. Angelo limits the meaning of "disburse-

ments" to payments from the bankruptcy estate, nor that the cases citing St. Angelo were correctly decided. Rather, the Court finds that all post-confirmation payments made by reorganized debtors, as well as payments from the bankruptcy estate, constitute "disbursements" for the purposes of the Amendment.

*Id. See also In re Maruko, Inc.,* 219 B.R. 567, 573 (S.D.Cal.1998, J. Keep) (holding that "there is no reason to limit which type of disbursements should be subject to the fee," and "quarterly fees should be applied to all ... post-confirmation payments."). Other cases adopting the broad definition of "disbursement" get their authority from the same sources as *Keating* and *A.H. Robins.*

The court in *In re Corporate Business Products, Inc.,* 209 B.R. 951, 955 (Bankr. C.D.Cal.1997, J. Robles) also looked to the plain meaning of § 1930(a)(6) in determining that post-confirmation disbursements include ordinary course payments. The court held:

> [T]his Court's broader construction of "disbursements" may be consistent with the plain meaning of the statute. 28 U.S.C. § 1930(a)(6) states fees are to be based upon disbursements "in each case." The amendment plainly states fees are to be calculated in each pending case; nowhere in the amendment does the statute mention disbursements should be calculated from payments arising out of the "estate." Given the fact payments from both the bankruptcy estate and reorganized debtors stem from the same "case," it is likely Congress intended both to be included in the calculations of quarterly fees.

*Id.* The case of *In re Sedro–Woolley Lumber Co., Inc.,* 209 B.R. 987, 989 (Bankr. W.D.Wash.1997, J. Steiner) followed the same line of reasoning when it held that "the 'plain language' of the statute does not limit the source of disbursement to property of the estate, nor does it limit payments to those made under the plan."

*Id. See also In re Boulders on the River, Inc.,* 218 B.R. 528, 541 (D.Or.1997, J. Hogan) (following the holding of *Sedro–Woolley Lumber* and finding that post-confirmation disbursements include ordinary course payments.).

The court in *In re Roy Stanley, Inc.,* 217 B.R. 23, 25 (Bankr.N.D.N.Y.1997, J. Gerling) analyzed the *Victoria Farms* holding, and its application post-confirmation:

> The court finds fault with ... reliance on the language in Victoria Farms. The issue before the court in Victoria Farms was whether payments to secured creditors, as well as those to unsecured creditors, constituted disbursements. At the time of the court's decision, the case had been dismissed and the question of payment of the UST's fees did not involve the issue of what constituted "disbursements" post-confirmation.... Arguably if the discussion of "disbursement" set forth by the court ... were to be adopted, there would never be post-confirmation disbursements, and only the minimum fee provided for in Section 1930 would be due the UST. This would obviously frustrate Congress' efforts to increase revenues to support the UST program.

*Id.* The *Stanley* court therefore held that post-confirmation disbursements included all payments made by the reorganized debtor post-confirmation, including ordinary course payments. *Id.* The district court in *In re Postconfirmation Fees,* 224 B.R. 793, 799 (E.D.Wash.1998, J. Williams) also adopted the broad definition of "disbursements" and held that disbursements included "all funds paid out post confirmation by the reorganized debtor." In reaching this holding, the court noted that the trend in cases has been to adopt the broad view that "disbursements mean all funds of the reorganized debtor." *Id.*

A third interpretation, a sort of middle ground, was found by Judge Schmetterer in *In re Pettibone* (Bankr.N.D.Ill., August 16, 1999). He defines "disbursements" to include all post-confirmation payments

made pursuant to a plan of reorganization. According to Judge Schmetterer, under the middle view, the amount of the U.S. Trustee quarterly fees would correlate "to the bankruptcy plan and process," in that a debtor would pay more fees pre-confirmation when it was significantly "using" the bankruptcy system versus post-confirmation, when the debtor is largely unmonitored. *In re Pettibone Corporation* (Bankr.N.D.Ill. August 16, 1999). Furthermore, there is no support for § 1930 to cover the activities of a reorganized debtor outside the confirmed plan of reorganization:

> A bankruptcy estate is created when a petition for relief is filed ... The bankruptcy estate is a separate legal entity ... Upon a plan's confirmation and/or pursuant to the plan's terms, the bankruptcy estate's assets revest in the name of the reorganized debtor and are no longer part of the bankruptcy estate ... Therefore, any payments, distributions or allocations made by the reorganized debtor after the plan's effective date, in the ordinary course of its business or otherwise, do not constitute "disbursements" under section 1930(a)(6) and cannot serve as a basis upon which the U.S. trustee may calculate its fee. The U.S. Trustee may, however, calculate post confirmation fees on any disbursements made by the bankruptcy estate after the plan's effective date. Such disbursements would include, for example, any payments made pursuant to a confirmed plan of reorganization.

*Id. Citing In re Jamko, Inc.,* 207 B.R. 758, 760–761 (Bankr.S.D.Fla.1996, J. Ray).

The Southern District of Florida has also adopted the middle view. In the first case, *In re SeaEscape Cruises, Ltd.,* 201 B.R. 321, 323 (Bankr.S.D.Fla.1996, J. Hyman), the bankruptcy court held that only post-confirmation payments made pursuant to a plan would constitute disbursements. Any payments made in the ordinary course of business would not be used

in calculating the U.S. Trustee's quarterly fee. The court in *In re Betwell Oil and Gas Co.,* 204 B.R. 817, 819 (Bankr.S.D.Fla. 1997, J. Mark) cited two reasons why the middle view should be adopted. First, taxing the ordinary business operations of a reorganized debtor would be unfair to a reorganized debtor who is no longer operating under the supervision of the bankruptcy court. *Id.* Second, if a broader definition of disbursement were adopted, monitoring costs would be imposed on the bankruptcy court to determine that the reorganized debtor is giving a proper account to the U.S. Trustee each quarter. *Id.*

Other courts have adopted the "middle ground" view and have held that U.S. trustee quarterly fees are calculated based only on disbursements made pursuant to a plan of reorganization. The court in *In re Munford, Inc.* 216 B.R. 913, 918 (Bankr. N.D.Ga.1997, J. Cotton) adopted the middle view because it "attempts to harmonize the legislative purpose" of raising revenues "with the reorganized debtor's right to a 'fresh start.'" According to the *Munford* court:

> When a debtor files a case under Title 11, a bankruptcy estate is created. If successful, a plan is proposed and confirmed. The confirmed plan of reorganization proposes the method by which a debtor's claims and interests will be satisfied. Thus, payments made pursuant to a confirmed plan are in satisfaction of estate debts or interests. The funds utilized are designated for that sole purpose regardless of the entity in whom the property right is vested.

*Id.* In *In the Matter of Danny's Markets, Inc.,* 239 B.R. 342, 347–48 (Bankr. E.D.Mich.1999, J. Shapero), the bankruptcy court adopted the middle view because a broader definition of "disbursement" would be fundamentally unfair to the debtor. According to the court, the U.S. Trustee is not actively involved post-confirmation in overseeing or monitoring the debtor. *Id.* at 347. Therefore, because a

post-confirmation debtor is not "using" the bankruptcy system as it was pre-confirmation, it would be grossly unfair for the debtor to continue to pay quarterly fees based on all post-confirmation ordinary course disbursements. *Id.*

 In the absence of controlling cases or guidance from the cryptic language of the statute, I believe that a court may and should look to the context of the statute before searching for guidance in the illusory and dubious recordings of some supposed congressional intent.[2] Thus, while the statute does not limit measuring disbursements only to those made from the "estate," which terminates upon confirmation, it also does not permit the reach of the bankruptcy court's influence for the purpose of this "tax" beyond the bounds of its influence for other purposes.[3] Day-to-day operations of the reorganized debtor are not subject to the scrutiny provided by the U.S. Trustee and the court pre-confirmation, despite the jurisdiction of the court in limited circumstances to review those operations until the case is closed. Upon confirmation of

the reorganization plan, the bankruptcy estate ceases to exist, and the reorganized debtor emerges. The bankruptcy court only has jurisdiction over the reorganized debtor to the extent of assuring that the reorganized debtor is meeting its obligations under the plan. *See In the Matter of Danny's Markets*, 239 B.R. 342, 348–49 (Bankr.E.D.Mich.1999); *In re Pettibone Corporation* (Bankr.N.D.Ill., Aug. 16, 1999). The Bankruptcy Code provides that post-confirmation, the reorganized debtor shall comply with all orders of the bankruptcy court regarding implementation of the confirmed plan. *See* 11 U.S.C. § 1142. Therefore, a bankruptcy court's post-confirmation jurisdiction only extends as far as the plan of reorganization. The same holds true for the U.S. Trustee. Post-confirmation, the reorganized debtor is no longer under the constant supervision and monitoring of the U.S. Trustee.

 In the Chapter 11 context, the confirmed reorganization plan is the law of

2. The legislative history to 28 U.S.C. § 1930(a)(6) is entirely unsatisfactory in determining what constitutes a "disbursement." Therefore, this court will look to a rule of statutory construction that has been used by other courts to interpret an ambiguous statute. *See Levin v. Dare*, 203 B.R. 137, 144 (S.D.Ind.1996, J. Hamilton) ("stating that when there is no especially powerful case law argument in either direction, ... the best guidance available come from the specific statutory context and the practical implications of alternative interpretations"); *In re Rossman*, 70 B.R. 985, 993 (Bankr.W.D.Mich. 1987, JJ. Nim and Howard) (quoting Judge (now Justice) Scalia: "I think it time for courts to become concerned about the fact that routine deference to the detail of committee reports, and the predictable expansion in that detail which routine deference has produced, are converting a system of judicial construction into a system of committee-staff prescription." *Hirschey v. F.E.R.C.*, 777 F.2d 1 (D.C.Cir.1985)); *In re Chesanow*, 25 B.R. 228, 229 (Bankr.D.Conn.1982, J. Shiff) (stating " 'courts have recognized that in interpreting statutes they must do more than sift through pages of legislative history for evi-

dence of technical meaning ascribed to statutory words; judges should interpret statutes in ways that effectuate legislative purpose and avoid unnecessarily harsh and unfair results.' " *Rockefeller v. Commissioner of Internal Revenue*, 676 F.2d 35, 36 (2nd Cir.1982)).

3. I use the word "tax" in this situation, because the fees required to be paid to the U.S. Trustee under 28 U.S.C. § 1930(a)(6) post-confirmation better fit the definition of "tax" rather than the definition of "fee." The Bankruptcy Code does not specifically define tax, but the court in *In re Oshkosh Foundry*, 28 F.Supp. 412, 414 (E.D.Wis.1939) has determined that a payment is a "tax" if the payment is compulsory. The U.S. Trustee fees are compulsory; therefore, they are taxes. Calculating U.S. Trustee fees based on the reorganized debtor's disbursements in the ordinary course of business is analogous to imposing "a special tax ... on a debtor's successful reorganization and business operation, a tax unrelated to the bankruptcy case that the debtor has no power to end where a continued plan trust has issues that keep the case open." *See In re Pettibone Corporation* (Bankr.N.D.Ill., Aug. 16, 1999).

the case.[4] Disbursements are then measured through the plan, not through some other definition, which includes payments made outside the plan in the ordinary course of business. The context in which the word "disbursement" is used supports the adoption of the middle ground and the analysis eloquently put forth by the only other judge in the Seventh Circuit to yet write on the subject. The fee must be measured by those disbursements made pursuant to the confirmed plan under the plan's express terms and may not be calculated on payments made in the ordinary course of the reorganized debtor's business.

Wintersilks, L.L.C. is responsible for U.S. Trustee fees for the second and third quarters of 1999, but only to the greater of the statutory minimum of $250.00 or an amount determined by the disbursements made pursuant to the plan of reorganization.

## ORDER

The court having this day entered its memorandum decision in the above-entitled matter,

IT IS HEREBY ORDERED that the debtor's Application for Final Decree is DENIED until the fees due and owing to the U.S. Trustee, calculated as prescribed in the accompanying memorandum decision, are paid.

IT IS FURTHER ORDERED that upon payment of the fees described above, the Final Decree shall be granted.