**In re ESCALERA, Ignacio S. and Stella V., Debtors.**

**Bankruptcy No. 93–02654–R21.**

United States Bankruptcy Court, E.D. Washington.

July 29, 1994.

Gary T. Farrell, Office of U.S. Trustee, Spokane, WA, for U.S. Trustee.

Dan O'Rourke, Spokane, WA, for debtors Ignacio S. and Stella V. Escalera.

Before JOHN M. KLOBUCHER and JOHN A. ROSSMEISSL, Bankruptcy Judges:

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Chief Judge:

### JURISDICTION

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) ("the district court shall have original and exclusive jurisdiction of all cases under title 11") and 28 U.S.C. § 1334(d) ("the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate"), 28 U.S.C.

§ 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district), and Local Rule 29 of the United States District Court for the Eastern District of Washington (referring all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11 to the bankruptcy judges of this district). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), (K) and (O).

## FACTS

Ignacio and Stella Escalera ("Debtors") voluntarily filed for Chapter 11 protection under the Bankruptcy Code (the "Code") on October 4, 1993. Prior to filing the case, Debtors' counsel Dan O'Rourke ("Counsel") obtained and recorded a second mortgage (the "Mortgage") against Debtors farm in order to secure all of his anticipated court approved fees and expenses. Debtors' farm is valued at $400,000.00 in their petition, and secures a $250,000.00 first lien of Farmers Home Administration.[1] Farmers Home holds the only secured claim against Debtors, while the total remaining unsecured debt is $15,896.74.[2]

Counsel disclosed the secured fee arrangement in both his Application for Employment, and Debtors' Schedule D and Statement of Affairs. Concurrent with filing the petition, Mr. O'Rourke filed a "Motion and Affidavit for Order Approving Lien Acquisition". The Escaleras' affidavit states that they have insufficient funds to pay Mr. O'Rourke a cash retainer, that the Mortgage secures only fees approved by the court, that they understand that they can object to any application for fees, and that their farm continues to be property of the estate.

Subsequently, the Escaleras filed a "Supplement To Application For Employment of Attorney" which indicated that they were unable to obtain the services of Mr. O'Rourke without giving the Mortgage, that their personal attorney had referred them to Mr. O'Rourke, that they believed that they would be unable to obtain the services of competent Chapter 11 counsel without giving a substantial retainer or lien upon property, that without Chapter 11 counsel their farm would have been lost to foreclosure, and that they believe the terms and conditions of the second mortgage are fair, reasonable and adequate.

Counsel gave notice of the motion seeking approval of his lien to all the creditors in the case. The United States Trustee ("UST") objected, asserting that the Mortgage made Mr. O'Rourke ineligible for employment under § 327(a).

In order to articulate a uniform interpretation of the law in the district, the matter was heard *en banc*.[3]

After hearing, the matter was taken under advisement to consider the effect of the Mortgage upon Counsel's application for employment.

## ISSUE

May an attorney holding a pre-filing mortgage, to secure post-filing services, be appointed attorney for the debtor?

## DISCUSSION

I. *Applicability of Section 327(a)*

■ The U.S. Trustee argues the appointment of Mr. O'Rourke violates Code § 327(a). That provision allows a debtor in possession, with court approval, to employ attorneys that: 1) are disinterested persons, and 2) do not hold or represent an interest adverse to the estate.

A. *Is Mr. O'Rourke a disinterested person?*

■ A disinterested person is defined in Code § 101(14)(A) as one who is not a credi-

---

1. Farmers Home Administration's lien is also secured by equipment valued at $40,000.00 in Debtors schedules.

2. Debtor's listings were $448,261.00 for total assets and $266,896.74 for total liabilities.

3. *In re Iron–Oak Supply Corp.*, 162 B.R. 301, 304–05 (Bankr.E.D.Cal.1993).

tor. A creditor is one that "has a claim[4] against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (footnote added). There is no indication that Mr. O'Rourke held a claim against the debtor prior to, or at the time of filing this case. As the First Circuit has pointed out in *In re Martin*, 817 F.2d 175, 180 (1st Cir.1987), a hypertechnical reading of the term "creditor" should be rejected:

[a]t first blush, ... [Section 327(a)] would seem to foreclose the employment of an attorney who is in any respect a "creditor." But, such a literalistic reading defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on account. Thus to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance for a debtor in possession, except under a cash and carry arrangement or on a *pro bono* basis. It stands to reason that the statutory mosaic must, at the least, be read to exclude as a "creditor" a lawyer, not previously owed back fees or other indebtedness, who is authorized by the court to represent a debtor in connection with reorganization proceedings—notwithstanding that the lawyer will almost instantaneously become a creditor of the estate with regard to the charges endemic to current and future representation.

Holding a mortgage that secures no existing obligation does not make Mr. O'Rourke a creditor.

B. *Does Mr. O'Rourke hold or represent an interest adverse to the estate?*

■ Section 327(a) allows employment of attorneys "that do not hold or represent an interest adverse to the estate." Additionally,

Code 101(14)(E)'s definition of disinterested person requires that such a person,

not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

In examining whether an attorney who holds a mortgage also holds or represents an interest adverse to an estate, the First Circuit has considered whether such a mortgage:

[c]reated either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one. The test is not dependent upon the presence of connivance or overreaching.... Section 327 is intended, however, to address the appearance of impropriety as much as its substance, to remove the temptation and opportunity to do less than duty demands.

*In re Martin*, 817 F.2d at 180–181.

The circuit in *Martin* then observed:

It must be remembered that, in bankruptcy, counsel already enjoy a statutory preference of sorts. To the extent that legal fees mirror services rendered to or on behalf of the estate the charges are allowable as administrative expenses under 11 U.S.C. §§ 330, 503, 507. Thus, when attorneys arrange additional security for their own benefit, they enjoy not merely a preference, but an *extra* preference.

817 F.2d at 182, fn. 6.

Thus, Congress has already established a statutory norm for treatment of debtors' counsel attorney fees as administrative expenses. 11 U.S.C. § 503(b)(2). They are allowed a first priority in distribution from

---

**4.** Section 101(5) defines a claim as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

the unencumbered equity of the estate. 11 U.S.C. § 507(a)(1); 11 U.S.C. § 726(a)(1).

A mortgage creates a lien, which is defined in Code § 101(37) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." In this case, the lien on the estate's real property secures the payment of the future fees to be incurred in the bankruptcy case. The purpose of taking the lien against the estate's property is to assure that Mr. O'Rourke's fees will be paid when other costs of administration with the same statutory priority might not. This purpose conflicts with the statutory scheme of priorities devised in the Bankruptcy Code, and is an adverse interest: an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant." *In re Roberts,* 46 B.R. 815, 827 (Bankr.D.Utah 1985).

Mr. O'Rourke argues that obtaining a mortgage to secure future fees is analogous to taking a retainer, which is permitted by the Code. Section 328(a) provides that a debtor in possession, with court approval "may employ . . . a professional person under § 327 . . . on any reasonable terms and conditions of employment, including on a retainer." Mr. O'Rourke's argument implies that an advance fee retainer is a possessory security interest [5], and since retainers are specifically authorized by § 328 they therefore are not inconsistent with the requirements of § 327.

Arguably, if state law allows an advance fee retainer to be treated as a possessory security interest, this court would find no basis to distinguish between such a retainer and a mortgage given as security for future fees. A debtor's counsel would have a priority in the retainer to the exclusion of other administrative claimants. In Washington, however, retainers which are given as an advance against fees are the client's funds and are to be held in trust until earned.[6] In bankruptcy, such a retainer constitutes a trust fund held for the benefit of the estate. As estate funds, counsel may draw against them only upon court authorization, and only after notice to all the creditors with opportunity to object.[7] Thus, holding an advance fee retainer is different from holding a lien in property of the estate. Holding the retainer in trust does not create an interest adverse to the estate. But an attorney who holds a lien against property of the estate to secure his fees to the prejudice of those who are entitled to payment pursuant to the Code distribution scheme, also holds an interest adverse to that of the estate.

We are aware that there are divergent opinions on this issue. *In re Pierce,* 809 F.2d 1356, 1363, (8th Cir.1987) appears to endorse in *dicta* that a debtor's attorney holding a lien against property of the estate to secure his future bankruptcy fees also holds an interest adverse to that of the estate, relying upon a bankruptcy court decision [8] later overruled in *In re Martin,* 817 F.2d 175 (1st Cir.1987). Neither of these cases are controlling precedent in this Circuit.

**5.** Some courts have held that counsel has possessory security interest in a pre-petition cash retainer. *In re Burnside Steel Foundary Co.,* 90 B.R. 942, 944 (Bankr.N.D.Ill.1988); *Matter of K & R Min., Inc.,* 105 B.R. 394, 397 (Bankr.N.D.Ohio 1989); *In re McDonald Bros. Constr., Inc.,* 114 B.R. 989, 999 (Bankr.N.D.Ill.1990); *In re Quincy Air Cargo, Inc.,* 155 B.R. 193, 197 (Bankr.C.D.Ill.1993).

**6.** Washington Rule of Professional Conduct 1.14(a), requires that "[a]ll funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable interest-bearing trust accounts." Washington State Bar Association Formal Opinion 186 holds that " 'advance fee deposits' . . . *must* be deposited in a trust account until the fee is earned."

See also *In re McDonald Bros. Const. Inc.,* 114 B.R. 989, 1000 note 15 (Bankr.N.D.Ill.1990), ranking Washington as among those jurisdictions holding that all retainers must be treated as client funds. Other courts have also ruled that counsel holds a pre-petition cash retainer in trust. See, e.g. *In re C & P Auto Transport, Inc.* 94 B.R. 682, 690 (Bankr.E.D.Cal.1988); *In re Crimson Investments, N.V.,* 109 B.R. 397, 402 (Bankr.D.Ariz.1989).

**7.** Federal Rule of Bankruptcy Procedure 2002(a)(7).

**8.** *In re Martin,* 59 B.R. 140, 143 (Bankr.D.Maine 1986).

In *Martin,* one of the few decisions dealing directly with the question, the debtor had insufficient cash to pay a retainer to bankruptcy counsel and gave counsel a mortgage on some of the debtor's real estate. *In re Martin,* 59 B.R. 140, 141 (Bankr.D.Maine 1986). The real estate was apparently not integral to reorganization process as it was neither the debtor's residence nor its place of business. 817 F.2d at 176. Bankruptcy counsel disclosed the note and mortgage to the court at the outset and the court approved employment but without reference to the note and mortgage. 59 B.R. at 142. The Chapter 11 soon failed and the case converted to one under Chapter 7. The Chapter 7 trustee moved to abandon the property and the creditors committee objected. After a hearing, the bankruptcy court set aside the mortgage, but approved bankruptcy counsel's reasonable fees as costs of administration. *Id.* at 144. The debtor appealed.

Thus, *Martin* is a classic confrontation between competing administrative claimants. Bankruptcy counsel's mortgage would have insured full payment, while the other administrative claimants would have suffered the shortfall. The bankruptcy court found that a mortgage constitutes an interest adverse to the estate and set it aside. *Id.* at 143. The Court of Appeals vacated this decision and remanded the matter to the bankruptcy court for further consideration. 817 F.2d at 183.

In doing so, the circuit rejected "a bright line rule precluding an attorney at all times and under all circumstances from taking a security interest to safeguard the payment of his fee." *Id.* at 181. Rather the circuit in *Martin* felt the issue should be left to the bankruptcy court,

> to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action (say, disqualification or disgorgement or invalidation of a lien). Sincerity or protestations of good faith, no matter how genuine, will not be enough. The test must be more an objective one. The question is not necessarily whether a conflict exists—although an actual conflict of any degree of seriousness will obviously present a towering obstacle—but whether a potential conflict, or the perception of one, renders the lawyer's interest materially adverse to the estate or the creditors.

*Id.* at 182.

The First Circuit then provided guidance to the bankruptcy court in making that decision:

> This inquiry is of necessity case-specific. There must be at a minimum full and timely disclosure of the details of any given arrangement. Armed with the knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether the security interest coveted by counsel can be tolerated under the particular circumstances. In so doing, the court should consider the full panoply of events and elements: the reasonableness of the arrangement and whether it was negotiated in good faith, whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services, whether it was a needed means of ensuring the engagement of competent counsel, and whether or not there are tell-tale signs of overreaching. The nature and extent of the conflict must be assayed, along with the likelihood that a potential conflict might turn into an actual one. An effort should be made to measure the influence the putative conflict may have in subsequent decision making. Perceptions are important; how the matter likely appears to creditors and to other parties in legitimate interest should be taken into account. There are other salient factors as well: whether the existence of the security interest threatens to hinder or to delay the effectuation of a plan, whether it is (or could be perceived as) an impediment to reorganization, and whether the fundamental fairness of the proceedings might be unduly jeopardized (either by the actuality of the arrangement or by the reasonable public perception of it).
>
> This list is, of course, not designed to be all-inclusive. What counts is that the matter not be left either to hindsight or the unfettered desires of the debtor and his attorney, but that the bankruptcy judge be given an immediate opportunity to make

an intelligent appraisal of the situation and to apply his experience, common sense, and knowledge of the particular proceeding to the request. If a lawyer is desirous of benefiting from such an arrangement, he has a responsibility to leave no reasonable stone unturned in bringing the matter to a head at the earliest practical moment.

. . . .

To sum up, each situation must be judged prospectively on its own merits. A mortgage should not be upheld simply because, after the fact, no harm appears to have been done. As we have indicated the *potential* for conflict and the *appearance* of conflict, without more, can justify cancellation of such a security interest. Yet, horrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending counsel away to lick his wounds. And, when all is said and done, doubts are to be resolved in favor of invalidation.

*Id.* at 182–83 (emphasis in original).

We respectfully disagree with the rule articulated in *Martin*. Although it outlines a number of factors to be considered, as a practical matter many of these factors are impossible to apply. How might a court determine the likelihood that a potential conflict might turn into an actual one? How should the court inquire into the reasonable perceptions of the public? These inquiries must be done at the outset of the case, yet potential competing administrative claimants may not be involved in the case until they have to extend credit as an administrative expense, and even then may not become aware of the bankruptcy until after they have extended credit. At the outset of every case in which an attorney seeks a lien, the *Martin* approach advocates an elaborate hearing to examine multiple, essentially subjective factors, but then instructs that "the *potential* for conflict and the *appearance* of conflict without more, can justify cancellation of such a security interest … when all is said and done, doubts are to be resolved in favor of invalidation." 817 F.2d at 183. Given that one who holds a lien on property of the estate holds an interest adverse to the estate and is ineligible to be employed under § 327(a), there is no need for such a burdensome and in all likelihood futile procedure.

## CONCLUSION

We find Mr. O'Rourke's taking a pre-filing mortgage to secure post filing services, if allowed to stand, would disqualify him for appointment as attorney for the debtor in that he would hold an interest adverse to that of the estate. We thus decline to approve employment on those terms. This ruling does not prevent Mr. O'Rourke from seeking compensation for his services to the debtor herein as a cost of administration.