**In re POSTCONFIRMATION FEES.**

**Bankruptcy No. MISC. 97–1.**

United States District Court,
E.D. Washington,
at Spokane.

Sept. 1, 1998.

Robert D. Miller, Assistant U.S. Trustee, Spokane, WA, for U.S. Trustee.

Carol Bernasconi, Ogden Murphy Wallace, Seattle, WA, for Lucky Badger Orchards, Inc.

## MEMORANDUM DECISION

PATRICIA C. WILLIAMS, Bankruptcy Judge.

This case involves the question of whether Chapter 11 debtors, post-confirmation, have an obligation to pay quarterly fees to the U.S. Trustee. The U.S. Trustee filed motions to convert several Chapter 11 proceedings with confirmed plans to Chapter 7 proceedings on the grounds that post-confirmation U.S. Trustee fees had not been paid. On September 19, 1997, twenty-three of those Chapter 11 cases were consolidated for the limited purpose of determining whether Chapter 11 debtors having confirmed plans were obligated to pay U.S. Trustee fees. Eleven of those debtors were corporations and twelve were individuals.

In these consolidated cases, all but one Chapter 11 debtor had confirmed plans before the effective date of the first amendment to 28 U.S.C. § 1930(a)(6) and one debtor had confirmed its plan after that date, but before the effective date of the second amendment. In several cases, the reorganization contemplated in the plans are nearly complete.

The court has jurisdiction pursuant to 28 U.S.C.A. § 157(b) and has heard the matter en banc pursuant to 28 U.S.C.A § 154 and Fed.R.Civ.P. 42(a). *In re Iron–Oak Supply Corp.,* 162 B.R. 301 (Bankr.E.D.Cal.1993); *In re Escalera,* 171 B.R. 107 (Bankr.E.D.Wash. 1994); and *In re Outen,* 220 B.R. 26 (Bankr. S.C.1998).

### STATUTORY HISTORY

Originally, 28 U.S.C.A. § 1930(a)(6) had required a Chapter 11 debtor to pay sliding scale fees to the U.S. Trustee until conversion, dismissal or confirmation of a plan.

(a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the district court or the clerk of the bankruptcy court ... the following filing fees: ... (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee ... in each case under chapter 11 of title 11 for each quarter ... until the case is converted or dismissed or confirmation of the Plan. The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter ...

In 1996 Congress enacted the Balanced Budget Downpayment Act, P.L. 104–99 which was effective January 27, 1996 and amended 1930(a)(6) to require payment of fees until conversion or dismissal of a case. "[A] quarterly fee shall be paid to the U.S. Trustee,

... in each case under Chapter 11 of Title 11 ... until the case is converted or dismissed, whichever occurs first." Numerous cases then considered the question of whether the amendment was intended to apply to open Chapter 11 cases in which plans had been confirmed before the effective date of the statute. There was widespread disparity in those decisions. The controversy was ended by the second amendment to the statute effective September 30, 1996 by the Omnibus Consolidated Appropriations Act of 1997, P.L. 104–208. Congress clearly stated in that second amendment that the requirement to pay post-confirmation U.S. Trustee fees applied "... from and after January 27, 1996, in all cases (including without limitation, any cases pending as of that date), regardless of the confirmation status of their plans...." Section 109(a) Omnibus Appropriation Act.

A thorough analysis of the statutory legislative background of § 1930(a)(6) is contained in *U.S. Trustees v. Boulders on the River*, 218 B.R. 528 (D.Or.1997). The current statute reads:

> (a) Notwithstanding section 1915 of this title, the parties commencing a case under title 11 shall pay to the clerk of the court the following filing fees: ... (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first....

28 U.S.C. § 1930(a)(6).

### ISSUES

In determining the application of § 1930(a)(6) to these consolidated cases the following issues must be addressed:

(1) Is the current enactment constitutional as it results in the imposition of the fee on debtors with plans confirmed prior to the enactment?

(2) As the confirmed plans contain no provision for payment of the fee, would the obligation to pay the fee be an impermissible modification of a confirmed plan?

(3) How is the fee to be calculated post-confirmation, i.e. what constitutes the disbursements upon which the fee is to be based?

### I.

### IS THE STATUTE CONSTITUTIONAL?

■ The U.S. Trustee seeks to impose fees for the period beginning with the 4th quarter of 1996 through the quarter in which each debtor requested closure of its case if the only issue preventing closure was the issue of the liability for these fees. The U.S. Trustee is not seeking to impose fees for the period after confirmation of the plan but before the effective date of the last amendment to the statute, i.e. September 30, 1996. Since the statute only requires payment of fees from the effective date of the amendment forward, it is not substantively retroactive. *A.H. Robins Company, Inc.*, 219 B.R. 145 (Bankr.E.D.Va.1998). *In re Prines*, 867 F.2d 478 (8th Cir.1989); *In re Munford, Inc.*, 216 B.R. 913 (Bankr.N.D.Ga.1997); *C.F. & I. Fabricators of Utah*, 150 F.3d 1233 (10th Cir.1998). The statute only requires payment of fees after its enactment which is prospective, not retroactive relief.

■ Even if the statute were to be given retroactive application by the trustee attempting to collect fees for the period before its enactment, Congress may enact legislation which has a retroactive effect and still satisfy constitutional due process requirements if the retroactive application has a legitimate public purpose and a rational basis. *U.S. v. Carlton*, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994).

■ 28 U.S.C. § 1930(a)(6) has a legitimate public purpose which is to make the U.S. Trustee system self-funded and, to the extent possible, to have users of the bankruptcy system rather than the general public absorb the costs of the system. The purpose of the amendments "... [W]as to increase quarterly fee revenues to help fund the [U.S. Trustee] system by extending the payment period beyond confirmation." *In re Gates Community Chapel*, 212 B.R. 220, 224 (Bankr.W.D.N.Y.1997). *See also In re Beechknoll Nursing Homes*, 216 B.R. 925

(S.D.Ohio 1997). Congress was concerned that the decline in Chapter 11 filings had reduced the amount of funding from fees although the continuing unclosed caseload still had to be managed. H.R. Rep. # 104–196, 104th Congress 1st Sess. at 16–17 (1995). As emphasized in *In re Hess' Sons, Inc.,* 218 B.R. 354 (Bankr.Md.1998), the legislation was part of a revenue measure. Due process requirements are met, as the statute has a legitimate public purpose in generating revenue and providing funding of the U.S. Trustee system primarily by the users of the system.

Once a legitimate purpose is found, the action taken must bear a rational basis to the furthering of that purpose. *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). By its very nature, fees assessed against participants in the bankruptcy system are rationally related to the funding of that system. In *U.S. v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) the question presented was whether a debtor under the Bankruptcy Act could obtain a discharge without paying the filing fees. Kras, at 447, 93 S.Ct. 631, the court stated: "The rational basis for the fee requirement is readily apparent."

The U.S. Trustee concedes that in these consolidated cases and indeed in most Chapter 11 cases, the involvement of the U.S. Trustee post-plan confirmation is minimal to nonexistent. The argument that post-petition Chapter 11 debtors do not receive benefit from the U.S. Trustee office commensurate with the fees to be charged post-petition is one better addressed to Congress than to this court. It is not for this court to decide if Congress was correct in it conclusion that fees should be assessed. It is this court's role to determine if Congress had a rational basis for doing so.

We join the growing consensus of courts since the September 1996 clarifying legislation to reject the claim that requiring the payment of post-confirmation quarterly fees is an impermissible retroactive application of the amendment to § 1930(a)(6). Many courts have determined that the amendment to the statute does not operate retroactively because it requires the payments of fees only from the date of its enactment forward. E.g., *In re Richardson Service Corporation,* 210 B.R. at 334; *In re Driggs,* 206 B.R. 787, 791 (Bankr. D.Md.1997); *In re McLean Square Assoc.,* 201 B.R. 436, 440–42 (Bankr.E.D.Va.1996). But, even if this was considered a retroactive operation, it would not be unconstitutional. Congress has expressly prescribed a retrospective temporal reach, and the statute is supported by a rational legislative purpose. Under these conditions, there is no constitutional violation....

*In re Harness,* 218 B.R. 163, 165 (D.Kan. 1998). This court concludes that the statute is constitutional in its present form.

## II.

### *IMPERMISSIBLE MODIFICATION OF PLAN*

Some courts have concluded that § 1930(a)(6) results in an impermissible modification to a confirmed plan and that issue has been raised by the debtors here.

When all the plans were confirmed, no such fee existed. The plans could not have provided for payment of fees which did not exist. The duty to pay arose post-confirmation, thus, the fact that the plans are silent on the subject is hardly surprising. This fee is no different than any expense which arises post-confirmation and is not provided for in a plan. It does not differ from any license fee or tax or governmental charge imposed after confirmation of a plan of reorganization. Nothing in a bankruptcy proceeding immunizes a debtor from paying license fees or taxes or governmental charges which are created post-confirmation. If, for example, the federal government in September, 1996 had statutorily created a license fee or tax on orchard operations which had not previously existed, nothing in the Code would have immunized a reorganized debtor owning an orchard from that post-confirmation liability and imposing it would not have been an impermissible plan modification. Similarly, these U.S. Trustee fees are in the nature of a tax which arises post-confirmation, imposition of which cannot be predicated by or effected by a plan. *A.H. Robins Company,*

Inc., *supra.* See also In re *Harness, supra,* and *In re Munford, supra.*

The U.S. Trustee by seeking payment of post-confirmation fees is not attempting to modify confirmed plans, but seeking to collect an obligation which arose post-confirmation. *C.F. & I. Fabricators of Utah, supra.* This court concludes that the imposition of fees under § 1930(a)(6) does not constitute a post-confirmation plan modification.

## III.

### *CALCULATION OF THE FEE BASED ON "DISBURSEMENTS"*

■ The U.S. Trustee is paid a sliding fee which is calculated on the amount of "disbursements" made by a Chapter 11 debtor. The greater the dollar amount disbursed, the greater the fee. In this situation, the U.S. Trustee seeks to calculate the fee on all disbursements made by the debtors post-confirmation, i.e. all operating costs. The debtors argue that they are Reorganized Debtors and not the entity or "party which commenced the case" against which § 1930(a)(6) assesses fees.

In this situation, the corporate debtors are the same corporate entity which existed pre-petition, which existed during the pendency of the Chapter 11 and which now exist post-petition. The corporate entity has not changed. The individual debtors are the same individuals who commenced the proceeding, reorganized and continue the current operations. The basis of the argument, however, is a legal distinction between a "debtor" and a "reorganized debtor". According to debtors' argument, as the reorganized debtor is a different legal entity which did not exist until after confirmation of the plan, it could not therefore be the "party which commenced the case" and against which the fee is to be assessed. Although interesting from a metaphysical view, the argument is not persuasive in this context. Congress in early 1996 amended § 1930(a)(6) to require the payment of post-confirmation U.S. Trustee fees for the reasons set forth in the legislative history, i.e. increased funding for the U.S. Trustee system. When it became apparent that the language in the statute did not clearly reflect congressional intent regarding its application to already confirmed cases, Congress amended the statute again to clarify that the fees were to be assessed against *ALL* Chapter 11 debtors regardless of the status of plan confirmation. Congress has spoken twice within the same year on the subject, and to interpret the statute in the manner suggested by debtors would result in no Chapter 11 debtor with a confirmed plan paying the fee. Such interpretation is clearly contrary to congressional intent and the language of the statute itself does not require such a result.

The debtors' argument regarding the distinction between a "debtor" and the "reorganized debtor" is a variation of the argument raised in other jurisdictions that no fees or only minimal fees are payable. Since upon confirmation it is typical and assumed true in these cases, that all property revests upon confirmation in the reorganized debtor, there is no longer any property of the estate. Thus it is argued, there are no disbursements from the estate giving rise to fees and the minimal fees should be imposed. *Betwell Oil and Gas*, 204 B.R. 817 (Bankr.S.D.Fla. 1997). Referred to as the "narrow view," *Betwell Oil* and other cases hold that reorganized debtors are liable only for the minimum fees. *In re Jamko, Inc.*, 207 B.R. 758 (Bankr.S.D.Fla.1996). *In re Celebrity Dup. Services*, 216 B.R. 942 (C.D.Cal.1997). The U.S. Trustee's interpretation that all funds disbursed by the reorganized debtor are used to calculate the fee is referred to in several cases as the "broad interpretation". Alternatively, some courts have adopted what they term the "middle view" and held that disbursement for purposes of post-confirmation fee calculations are only those payment which are made pursuant to a debtor's plan. Two cases have adopted this "middle view". *In re Celebrity Duplicating Services, Inc.*, 216 B.R. 942 (C.D.Cal.1997) and *In re Munford, supra.*

Many of the cases adopting the "middle view" rely upon the Ninth Circuit's interpretation of the term "disbursements" in *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir.1994). The initial issue in that case was whether sale proceeds from the Chapter

11 debtor's farm constituted property of the estate even though they had been paid directly to the secured lenders by the closing agent and not paid by the debtor. After determining that those proceeds did constitute property of the estate, the court further determined that those proceeds had to be included in the disbursements which are the basis of the calculation of the U.S. Trustee fee. "However, a plain language reading of the statute shows that Congress clearly intended disbursements to include all payments from the bankruptcy estate." *St. Angelo,* at p. 1568.

> The term 'disbursements' is not defined anywhere in 28 U.S.C. § 1930(a)(6), its legislative history, or the case law. However, a plain language reading of the statute shows that Congress clearly intended 'disbursements' to include *all* payments from the bankruptcy estate. As the Supreme Court noted in *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979), '[a] fundamental canon of statutory construction is that ... words will be interpreted as taking their ordinary, contemporary, common meaning.' The definition of 'disburse' is 'to expend ... pay out.' *Webster's Third New International Dictionary* 644 (1976).

*St. Angelo,* at 1534.

Because *St. Angelo* referred to "disbursement" as including "all payments from the bankruptcy estate," these reorganized debtors have argued that "disbursement" for purposes of calculating the post-confirmation fees under the amendments to § 1930(a)(6) should be limited to the bankruptcy estate, i.e. amounts paid to pre-confirmation obligations pursuant to the plan. This argument ignores the fact that the property of the estate revested in the reorganized debtor and the funds from which plan payments are made typically are earned by the reorganized debtor post-confirmation and in no way constitute property of the estate. Again declining to become involved in a metaphysical analysis, this court concludes that the argument is not persuasive for the reasons best articulated in *A.H. Robins Company:*

> ... The Court refuses to distort the holding in *St. Angelo* so as to limit the meaning of 'disbursements' to payments made from the bankruptcy estate. First, the *St. Angelo* court merely stated that 'disbursements' *include* payments made from the bankruptcy estate. It never stated that 'disbursements' are constituted *solely* of such assets, nor that other sources of funds are *excluded* from the meaning of 'disbursements.' Second, the *St. Angelo* decision was made prior to the Amendment's existence. When *St. Angelo* was decided, fees were not payable post-confirmation, hence UST fees were only premised upon payments from the bankruptcy estate. The court in *St. Angelo,* therefore, had no cause to distinguish between payments made out of the bankruptcy estate and those derived from another source, because prior to the Amendment there was simply no other source for UST fees aside from the bankruptcy estate. *See In re Corporate Business Products, Inc.,* 209 B.R. at 954. Finally, the St. Angelo court specifically referred to the ordinary, common meaning of 'disbursement,' finding that it means solely 'to expend ... pay out,' *St. Angelo,* 38 F.3d at 1534 (citing *Webster's Third New International Dictionary* 644 (1976)), and was obviously not attempting to make 'disbursement' a term of art. This Court, therefore, does not find that *St. Angelo* limits the meaning of 'disbursements' to payments from the bankruptcy estate, nor that the cases citing St. Angelo to support such a limitation were correctly decided. Rather, the Court finds that all post-confirmation payments made by reorganized debtors, as well as payments from the bankruptcy estate, constitute 'disbursements' for the purposes of the Amendment.... (footnotes omitted).

*In re A.H. Robins Company, Inc., supra* at 151.

Courts adopting the 'broad view' that the proper calculation of the fee is based upon all disbursements of the post-confirmation debtor have considered *St. Angelo* and distinguished it.

As noted at the outset, the general intent of the Congress to impose a post-confirmation quarterly tax on reorganizing Chapter 11 debtors is clear. At the time it amend-

ed § 1930(a)(6), the Congress understood that disbursements, pre-confirmation, meant all payments by the bankruptcy estate, including on secured obligations. In simply deleting plan confirmation as a terminating event, the Congress cannot be assumed to have redefined the term 'disbursements' for post-confirmation purposes, and to have intended that that term would mean one thing pre-confirmation and something else post-confirmation. Accordingly, this Court joins others who have so held.

*In re Campesinos Unidos, Inc.,* 219 B.R. 886, 889 (Bankr.S.D.Cal.1998). Other trial courts in the Ninth Circuit have also applied the broad view and concluded that the language in *St. Angelo* was not controlling as the situation before that court only involved the estate's liability for pre-confirmation fees. *In re Sedro–Woolley Lumber,* 209 B.R. 987, 988 (Bankr.W.D.Wash.1997); *In re Maruko, Inc.,* 219 B.R. 567, 571 (S.D.Cal.1998).

Another lower court in the Ninth Circuit which has applied the "broad view" that disbursements include all funds paid out by a reorganized debtor is *U.S. Trustees v. Boulders on the River, Inc., supra.* It did not specifically address *St. Angelo,* but after its extensive analysis of the history of the current § 1930(a)(6) stated: "This court is convinced Congress intended to extend the post-confirmation fees to the reorganized debtor based upon distributions made by the reorganized debtor."

The more recent decisions considering the issue appear to be adopting the "broad view" that disbursements means all funds of the reorganized debtor. *In re Stanley,* 217 B.R. 23 (Bankr.N.D.N.Y.1997); *In re Gates Community Chapel of Rochester, Inc., supra;* and *In re Campesinos Unidos, Inc., supra.*

If the definition of disbursements argued by debtors were to be adopted, there would never be post-confirmation disbursements and only the minimum fee provided for in § 1930 would be due the U.S. Trustee. This would frustrate Congress' efforts to increase revenues to support that system. *Stanley, supra.* Whether or not it is fair for the debtor to continue to shoulder the costs associated with the payment of U.S. Trustee fees based on post-confirmation operating expenses is a matter left to be addressed by Congress, not this court. *Corporate Business Prod.,* 209 B.R. 951, 955 (Bankr.C.D.Cal. 1997) cited in *Stanley, supra.*

The term "disbursement" means according to the Ninth Circuit in *St. Angelo,* "all funds paid out." Funds paid out would include, and indeed primarily constitute, the operating expenses of the post-confirmation reorganized debtor. There is nothing in § 1930(a)(6) which implies to the contrary. The term disbursements includes all post-confirmation expenditures by the debtor until the case is closed or dismissed or converted.

### CONCLUSION

In summary, the statute is constitutional as it is not retroactive legislation. Even if it were retroactive in nature, it would meet constitutional requirements as it has a legitimate public purpose and a rational basis. The statute is applicable to confirmed Chapter 11 debtors whose cases have not been closed but whose plans were confirmed prior to the effective date of the statute and then are required to pay post confirmation United States Trustee fees. Those fees are to be based upon all funds paid out post confirmation by the reorganized debtor.