### In re ADVANCED IMAGING TECHNOLOGIES, INC., Debtor.

### No. 03–13973–PHB.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Nov. 14, 2003.

peals in *Gruntz* and subsequent cases were not raised before the District Court.

Gray Cary Ware & Freidenrich LLP, Brian D. Buckley, Seattle, WA, Evan R. Sorem, Jeffry A. Davis, San Diego, CA, for Debtor.

Wood & Jones, Denice E. Moewes, Edmund J. Wood, Seattle, WA, for Trustee.

William L. Courshon, Seattle, WA, for U.S. Trustee.

## MEMORANDUM DECISION ON FEE APPLICATION AND REQUEST TO APPLY RETAINER

KAREN A. OVERSTREET, Bankruptcy Judge.

This matter came before the Court on the first and final fee application filed by Gray Cary Ware & Freidenrich ("Gray Cary"), counsel for the debtor in possession, Advanced Imaging Technologies, Inc. (the "Debtor"). The Chapter 7 trustee (the "Trustee") filed the sole objection to approval of the fees, and the parties have thoroughly briefed the pertinent issues. There are no disputed issues of material fact, so the Court may resolve the application for fees as a matter of law.

### I. JURISDICTION

This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 157, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (K).[1]

### II. FACTS

The facts are undisputed. Prior to the Debtor's Chapter 11 filing, and pursuant to a March 12, 2003 engagement letter (the "Engagement Agreement"), the Debtor gave Gray Cary a $75,000 retainer. According to the Engagement Agreement, the retainer was "to secure payment of fees and costs" incurred by the firm as bankruptcy counsel to the Debtor. A portion of the retainer ($53,408.93) was applied prepetition to legal fees incurred by Gray Cary prepetition so that no fees were owed to Gray Cary by the Debtor at the time of the bankruptcy filing.

The Debtor filed its Chapter 11 petition on March 26, 2003. An order approving Gray Cary's employment as counsel for the Debtor pursuant to the terms of the Engagement Agreement was entered on May 12, 2003 after notice and a hearing (the "Employment Order"). The Employment Order specifically provides that "Gray Cary shall be authorized to apply the remaining retainer of $21,592.07[2] held in its trust account to any fees and costs incurred in the debtor's Chapter 11 case after appropriate application, notice and hearing." The case was converted to a Chapter 7 on June 2, 2003. Gray Cary filed the instant fee application on June 20, 2003 and noted it for hearing. The Trustee filed the only objection to the application.

### III. ISSUES

Two issues are presented for decision: (1) Whether Gray Cary has a perfected

---

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001 *et seq.*

2. The amount in Gray Cary's trust fund is actually $21,742.07, due to an accounting error that has been remedied.

security interest in the prepetition retainer it obtained from the Debtor to secure payment of postpetition services, and (2) if so, does this security interest disqualify Gray Cary as counsel for the Debtor either because Gray Cary is not disinterested or because it holds an interest adverse to the debtor, justifying denial of its fees pursuant to Section 328(c).

## IV. DISCUSSION

In its fee application and subsequent briefing, Gray Cary contends that it has a lien, pursuant to Washington law, on the funds paid by the Debtor as a prepetition retainer to secure its fees earned and allowed postpetition. The Trustee objects to payment of Gray Cary's fees from the retainer funds on a number of grounds. First, the Trustee contends that Gray Cary failed to disclose that it would claim a security interest in the retainer. Second, the Trustee argues that if Gray Cary intended to assert a security interest in the funds it should have been listed as a secured creditor in the Debtor's schedules, and in this case, it was not. Finally, the Trustee urges that if Gray Cary has the status of a secured creditor, then the compensation requested by Gray Cary must be disallowed pursuant to Section 328(c).

### A. *Gray Cary Has a Security Interest in the Retainer.*

■ Gray Cary asserts that it holds the retainer funds as a "security retainer" and that its interest in the funds is perfected by possession, both under Washington's attorneys' lien statute (RCW 60.40.010) and under the Washington Uniform Commercial Code (RCW 62A.9A). A security retainer is defined in *Collier on Bankruptcy* as "one held by attorneys to 'secure payment of fees for future services that the attorneys are expected to render.' The funds ... remain property of the es-

tate until the attorney applies charges for services rendered against the retainer." 3 L. King, *Collier on Bankruptcy* ¶ 328.02[1][c], p. 328–6 (rev. 15th ed.2002). Although Section 328(a) of the Code authorizes the Court to approve a retainer agreement, that section does not address the permissibility of a security retainer.

The prevailing view among bankruptcy courts is that security retainers are allowed and recognized in the context of bankruptcy proceedings. *See In re Printcrafters, Inc.,* 233 B.R. 113, 118 (D.Colo. 1999); *In re Zukoski,* 237 B.R. 194, 198 (Bankr.M.D.Fla.1998); *In re Insilco Technologies, Inc., et al.,* 291 B.R. 628, 636 (Bankr.D.Del.2003). As of the petition date in this case, pursuant to Gray Cary's Employment Agreement, it held the retainer funds by agreement with the Debtor to secure its future fees. Therefore, Gray Cary holds a security retainer as defined by *Collier on Bankruptcy* and as described in the foregoing cases.

■ State law determines the validity and extent of an attorney's lien in bankruptcy. This Court agrees with Gray Cary that it has a possessory lien against the retainer funds by virtue of RCW 60.40.010 and a perfected security interest under the Washington Uniform Commercial Code, RCW 62A.9A.

Under RCW 60.40.010, an attorneys' lien attaches to funds in the possession of the attorney. That statute provides as follows:

An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: (1) Upon the papers of his client, which have come into his possession in the course of his professional employment; (2) *upon money in his hands belonging to his client....*

(emphasis added). Under the statute, the lien amount is equal to the compensation due the attorney at any given point in the representation. There is no dispute that Gray Cary holds the retainer funds in its possession and that these funds are held for payment of its postpetition compensation.

Further, under Washington's Uniform Commercial Code, Gray Cary has a perfected security interest in the retainer funds. In accordance with RCW 62A.9A–201(a), a security interest is effective between the parties according to its terms. Under the Employment Agreement, the Debtor agreed that Gray Cary would hold the retainer funds to secure payment for future services rendered to the Debtor. The conditions of attachment, which are as follows, have also been met:

(1) Value has been given;

(2) The debtor has rights in the collateral ...;

(3) One of the following conditions is met:

(A) The debtor has authenticated a security agreement that provides a description of the collateral ...; or

(B) The collateral is not a certificated security and is in the possession of the secured party under RCW 62A.9A–313 pursuant to the debtor's security agreement....

RCW 62A.9A–203(b). First, Gray Cary gave value by agreeing to act as bankruptcy counsel for the Debtor, and it provided services to the Debtor postpetition. Second, at the time the retainer funds were paid to Gray Cary, and at all times thereafter, the Debtor owned said funds. Finally, Gray Cary's Engagement Agreement described the retainer and Gray Cary took possession of the retainer funds prior to bankruptcy.[3] Pursuant to RCW 62A.9A–312(b)(3) and 313(a), Gray Cary's security interest in the retainer funds is perfected by possession.

**B. *Gray Cary's Security Interest Was Disclosed To and Approved By the Court.***

■ Relying on an unpublished opinion by Judge Steiner, *Colman Assoc. Ltd. Partnership,* Bankr.No. 95–04125 (May 20, 1997), the Trustee argues that Gray Cary's claimed security interest is an attempt to encumber property of the estate in violation of the automatic stay of Section 362. In *Colman,* Judge Steiner held that the prepetition retainer of debtor's counsel became property of the estate upon the filing of the debtor's bankruptcy petition and that the automatic stay prohibited the creation of a lien in the retainer in favor of the attorney. In that case, however, the retainer was disclosed in an application for employment that was not sent out on notice to creditors, and the retainer was not mentioned in the *ex parte* order of employment that was entered.

In this case, Gray Cary's security interest was created and perfected prior to bankruptcy when the Engagement Agreement became effective and Gray Cary took possession of the retainer funds. Further, to the extent that security interest could be deemed to be a postpetition security interest because the fees secured were incurred postpetition, the Court concludes

---

**3.** Local Rule of Bankruptcy Procedure 2014–1 requires a professional seeking employment to disclose "whether any retainer has been paid or promised, and the anticipated method of compensation, and sources thereof, ..." The language of Gray Cary's Engagement Agreement, as approved by the Court, expressly provides that "a 'refundable retainer'(to secure payment of fees and costs)" will be provided by the client. Gray Cary used language that—albeit minimally—manifested the intention to treat the funds as a security retainer as to which a possessory lien might be asserted.

that the creation of the security interest was not in violation of Section 362. Unlike in *Colman*, the Engagement Agreement was approved and the Employment Order was entered after notice to creditors and a hearing, and the Employment Order specifically referenced the retainer. As previously noted, the Employment Order states that "Gray Cary shall be authorized to apply the remaining retainer of $21,-592.07[4] held in its trust account to any fees and costs incurred in the debtor's Chapter 11 case after appropriate application, notice and hearing." Accordingly, there was no stay violation.

C. *Gray Cary's Security Interest Does Not Disqualify It From Acting As Counsel for the Debtor.*

■ The Trustee contends that if Gray Cary is found to have a security interest in the retainer funds, then Gray Cary should be deemed to hold an interest adverse to the estate such that it cannot have acted as counsel for the Debtor. Under Section 327(a), counsel for a debtor in possession must be (i) a disinterested person, and (ii) must not hold or represent an interest adverse to the estate. A disinterested person is defined in Section 101(14)(A) as one who is not a "creditor". Section 101(10)(A) in turn defines a "creditor" as one that "has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." Section 101(5)(A) defines a "claim" as a right to payment. Because Gray Cary was

not owed anything as of the petition date, it was not a creditor for purposes of Section 327(a). *See In re Escalera*, 171 B.R. 107, 111 (Bankr.E.D.Wash.1994)(professional holding a mortgage securing no existing obligation as of petition date is not a creditor).

Under the second requirement of Section 327(a), Gray Cary must not hold or represent an interest adverse to the estate. As part of the definition of disinterestedness in Section 101(14)(E), Gray Cary must

not have an interest *materially adverse* to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

(emphasis added).[5] Some courts have adopted the view that the existence of a security interest in favor of counsel in any property of the estate creates a *per se* disqualifying interest for purposes of Section 327(a). *See In re Escalera*, 171 B.R. 107 (Bankr.E.D.Wash.1994)(mortgage held to secure postpetition fees renders counsel disqualified).[6] Other courts, however, have applied a more flexible rule, recognizing that:

After all, any attorney who may be retained or appointed to render professional services to a debtor[-]in[-]posses-

---

4. The amount in Gray Cary's trust fund is actually $21,742.07, due to an accounting error that has been remedied.

5. Although Section 101(14)(E) contains the materiality qualifier, the Court notes that the qualifier is not carried over to either Section 327(a) or Section 328(c).

6. In *dicta*, the court in *Escalera* held that an advance fee retainer would not be treated like

a possessory security interest and therefore would arguably not create an adverse interest for counsel. 171 B.R. at 112. This Court disagrees with that analysis, in that the Court concludes that Washington law does permit counsel to obtain a possessory lien, notwithstanding that counsel is required by the Washington Rules of Professional Conduct to maintain those funds in a trust account. Wash. Rules of Prof'l Conduct R.1.14(a).

sion becomes a creditor of the estate just as soon as any compensable time is spent on account. Thus, to interpret the law in such an inelastic way would virtually eliminate any possibility of legal assistance for a debtor [-]in[-] possession, except under a cash-and-carry arrangement or on a pro bono basis.

*In re Printcrafters, Inc.,* 233 B.R. 113, 120 (D.Colo.1999)(*citing In re Martin,* 817 F.2d 175, 180 (1st Cir.1987)) (footnote omitted).

■■■ This Court has adopted a case-by-case approach to determine whether a security interest held by debtor's counsel in property of the estate to secure future fees constitutes a disqualifying factor for purposes of Section 327(a). The Court considers, among other things, the value of the property subject to the lien, whether the property subject to the lien is critical to the reorganization of the debtor, whether the presence of the lien will cause counsel to act in any way that may be adverse to the interests of the estate, and whether the lien was critical to the debtor's securing of legal representation. Based upon the facts of this case, the Court concludes that Gray Cary's lien against the retainer funds does not disqualify it from acting as counsel for the Debtor.

The Trustee also claims that Gray Cary's receipt of $53,408.93 in funds from its trust account on the date of the Chapter 11 filing placed Gray Cary in a position directly adverse to the estate. The Court disagrees. Gray Cary did not seek Court approval of the disbursement of the $53,408.93 because such approval was not necessary. The earned fees were incurred and paid prior to—though on the same day as—the filing of the bankruptcy petition. This fact was noted in Gray Cary's original employment application. The Trustee points to Gray Cary's attempts to head off preference issues in its employment application, but this merely indicates to this Court the lengths to which debtors' counsel need go to ensure that services rendered to debtors are properly compensated.

■■■ On that note, the Court recognizes the difficulty that distressed Chapter 11 debtors encounter in employing experienced bankruptcy counsel. It is critical that Chapter 11 debtors have a means certain by which to ensure their counsel will be paid, particularly in the event of conversion. The means used here—the assertion of a possessory lien on a prepetition retainer to secure postpetition services—is valid and available for use by counsel for Chapter 11 debtors.

### CONCLUSION

For the foregoing reasons, Gray Cary's First and Final Application for Allowance of Fees and Reimbursement of Expenses is hereby approved, and Gray Cary may apply the remainder of its retainer to the allowed fees and costs.